The next case on the call is case number 123-370, agenda number 3, Edwards v. Atterberry. Counsel, you may proceed. May it please the Court, opposing counsel? I apologize if the sniffling that I have today interferes with oral arguments, but I realize I regret to not wear a coat this morning. You know, I join you in that. No statute, no offense. No offense, no jurisdiction. Why are we here? I'm Rob Hanauer. I am not the attorney who briefed this case or handled it before at the trial court level. Dan O'Day is. As many of you know or may know, Dan O'Day passed away, and I'm handling this appeal for him. Dan O'Day trained me to be a criminal defense attorney for 11 years. In those 11 years, he taught me that the state has the law. Usually they have the facts, and all they need to do is keep it black and white so that you don't lose a jury. He also taught me that a good defense attorney tries to live in the gray area. And how do we get to the gray area? He always said that the way to get... I teach, and I always say I get to answer the phone when it goes off, but not a phone. But anyways, so Dan O'Day always taught me that to live in the gray area, you have to create a circus atmosphere. And now you've got one. Exactly. So what I was thinking is when I'm reviewing this record not knowing that I was going to be handling this appeal, oh no, this is a Dan O'Day trial, a Dan O'Day special, and I am going to be lost. Well, I did find that we had a circus atmosphere. I was a little disappointed in Dan because it was not him that tried to create it. Dan O'Day, at every turn in the trial court in this case, sought to make it black and white. What is the offense? What is the offense? Where is the jurisdiction? What is the offense? He did it at every turn. There's no waiver of any argument. This was well briefed at every information. The first one, when the state charged a violation of Section 5 of the Timber Buyers Licensing Act, which I will, to shorten it, TBLA. It was, again, when the state charged Section 10 of the TBLA. I still, standing right here before you, I ask the question, why are we here? I still do not know what the offense is. The state said that it was Section 5 and two administrative regulations, Section 1535.1B and Section 1535.60. Then came a second information, alleging a violation of Section 10 of the TBLA and the same two administrative provisions. I will say that the court can take judicial notice. This court can take judicial notice that the IDNR, after this court's state proceedings in Schuyler County, attempted and did, for a period of 92 days, suspend Mr. Edwards' since-acquired timber buyers license. What did they say the violation was when they tried to suspend it? They said it was a violation of Section 3 of the TBLA, not 5, not 10, not Section 1535.1B, not Section 1535.60. And now, today, and for the first time filed in the Respondent's Brief, the Attorney General's Office is going to get up here and say Section 10 was a mistake, that it was really Section 11A. And, as I will show, Section 11A wouldn't even be applicable. So, why are we here? The clerk of the Schuyler County Circuit Court did not know. There's a sticky note. It's Exhibit A to the appendix. The sticky note says, quote, 427.16 alleges a crime, question mark. 225 backslash 735-5, question mark, question mark, question mark. And the clerk later said, offense not in table, call AOIC, short for Administrative Office of the Illinois Courts. Informations, as far as I've always seen, and all of the research that we've been able to find, always cite the statute identifying an offense. No offense, or no statute, no offense, no offense, no jurisdiction. I would love to see that in an opinion. Counsel, you know, writ of prohibition is an extraordinary remedy, and there are certain requirements. One of those is that you lack any other adequate remedy. That is correct. Why isn't normal appellate review an adequate remedy in this case? Because normal appellate review would potentially give us the opportunity to stay the sentence in conviction, but it does not stay the administrative proceedings, which the DNR have already instituted against Mr. Edwards' since-acquired timber buyer's license. Now, we were able to go into Tazewell County, and the court can take judicial notice of that in an MR case, and have the circuit court in Tazewell County granted a restraining order against the DNR, stopping them from doing just that. So what exactly are you asking? To throw out the proceedings that occurred in the circuit court, or to in some way enjoin the DNR from proceeding? Correct. We are asking in this case, before this court, to have an order entered granting the prohibition and directing the respondents in Schuyler County from engaging, preventing them from engaging in any further action in this case, because they would be acting beyond the scope of their jurisdiction. And any actions that have already occurred. And that's because it's an administrative proceeding? No, in Schuyler County it was a criminal proceeding. But simultaneous to this appeal, the IDNR, after this court stayed all proceedings in Schuyler County pending this appeal, the IDNR attempted to administratively, in a civil proceeding, administratively suspend Mr. Edwards' timber buyer's license, based on an alleged violation of Section 3 of the Timber Buyers Licensing Act, which isn't even what's been argued here. It's not been what was argued in Schuyler County. So just in a separate matter. And what we're saying is that even if you were to stay the proceedings in the ordinary course of a criminal appeal, that wouldn't stop the IDNR from doing what it is they're trying to do. So we're saying that all orders entered in Schuyler County by the respondents were beyond the scope of their jurisdiction, except for if there was an order entered dismissing the case for lack of jurisdiction. And then the IDNR would have a problem on their hands because there would not have been any violation. I hope I've. Keeping with that thought, you couldn't simply raise this in an appeal? Well, we could raise it on appeal. The only problem would be that we still have the issue of what the administrative agency is doing contemporaneously. So because of the license and because of the IDNR's ability to continue administrative proceedings simultaneously, the timing component, if Mr. Edwards were to lose his license and the normal appellate process takes, I think that the idea is typically that it takes longer than the Supreme Court does to grant an order for a writ or an order of prohibition. This case got delayed a little bit because of Mr. O'Day's illness, but ordinarily having an order of prohibition entered by the Supreme Court would be quicker than the ordinary appellate process. And this is not an ordinary defendant that doesn't have a license that's at stake, and the harm that would be irremediable if, in fact, he were to prevail in the appellate court or lose in the appellate court and then come up to the Supreme Court and win. I understand that this is quicker, but doesn't Section 11A make this a little confusing? If the state could have brought a valid charge under the section, I know you're saying they didn't, but if they could have brought a valid charge, is prohibition an appropriate remedy then? I believe it would still be an appropriate remedy, Your Honor, because even 11A doesn't provide a valid charge. 11A is a penalty provision. It doesn't proscribe any specific conduct. And then you've got to get into the administrative regulations. There's 1535.1. Now 1535.1 in the Illinois Register, which we cited in our briefs, sets forth that the purpose of 1535.1A and 1535.1B is to outline and further explain the application process for a license under the TVLA. 1535.1A almost mirrors the language in Section 3 of the TVLA, which is the license application process. It only applies to licensees or applicants for licensure under the TVLA. So based on not only the fact that it mirrors Section 3 of the TVLA, which only on its face applies to licensees and license applicants, Mr. Edwards at the time was neither. He was an agent for a licensee. And the express stated purpose in the Illinois Register of what the purpose of 1535.1 was, it was not intended to regulate anything other than explain, further explain what is required to apply for a license. And in any event, so it's pretty clear that it was only meant to regulate and explain the application process for licensees and applicants for a license. To the extent that it could be read to be ambiguous as to whether it was intended to regulate agents or not, which I don't think it is, but if it was, or if it was ambiguous as to whether it was to have civil or criminal penalties, we cited the INZURIATA case in our brief, which stands for the proposition that it would encourage the court to take the approach, the rule of lenity would encourage the court to take the approach that it should be resolved, any ambiguity in favor of Mr. Edwards, not in favor of the state or the Department of Natural Resources. With respect to 1535.60, which is the other administrative regulation that would be a regulation in addition to 11A, well, and let me step back, sorry, 1535.1B, mew Section 3 of the TBLA. Section 3 of the TBLA has its own sentencing provision or penalty provision for a violation of Section 3. That penalty provision is actually not 11A, it's 11A.5, and it is not a situation where 11A.1, 2, 3, 4, 5, if you read the statute, it says 11A, and then 11A.5, and then there are subparts below it, so it is not like 11A.5 is part of 11A. So 11A wouldn't even be the right statutory provision, and in any event, it's a penalty provision. It doesn't state an offense under the Wollahans-Lumber case, which we also cite in our brief. It says that you need two components for an offense. You need the prohibited conduct, and you need a penalty provision. In the absence of prohibited conduct with only a penalty provision, which is 11A in any event, it wouldn't state an offense under the Code of Criminal Procedures, Section 111-3. With respect to 1535.60, that is just a penalty provision, and there are a few different problems with that. Article 6, Section 9 of the Illinois Constitution of 1970, the last sentence, says what a circuit court's jurisdiction is with respect to adjudicating or reviewing administrative agency decisions. And the jurisdiction of the circuit court is as a court of review, not as a court of adjudication. So in any event, 1535.60 wouldn't apply either. So we don't have, even if 11A stands, 11A, it falls. A, 11, because one, 11A is not a, it's not an offense. It only provides a penalty. And the corollary regulations that were cited in the charging instrument are not penal in nature. So for those reasons, I think I've gone a little out of order, but in Section 10, which is the other statute that's charged, it's a rules-enabling statute. There's no way for Kenan Edwards, not being the Department of Natural Resources, to break that rule, to violate that rule. So you have Section 10. You have Section 1535.1b and Section 1535.60. All three, none of them state an offense. So we're still at no offense, no statute, no offense, no offense, no jurisdiction. And I think going into offense a little bit, it is important. Section 1.3 of the Criminal Code sets forth what an offense is. An offense must be described in the Criminal Code or in another statute of this state. Section 1.5 of the Criminal Code says that state criminal jurisdiction involves an offense. 2.12 of the Criminal Code states that an offense is a violation of a penal statute. 2.22 of the Criminal Code sets forth that a statute is an act of the General Assembly or the Constitution of 1970. Well, the Constitution. We're on the 1970 Constitution now. And then 1.11.3 of the Code of Criminal Procedure sets forth the requirements in a charging instrument. The requirements include, among other things, the offense. And now the Attorney General's Office is going to get up here and they're going to cite cases like Gilmore, Peugeot, and a line of cases that say that sufficient notice is enough. If the defendant was on notice as to what they're being charged with, strict compliance with 1.11.3 is not necessary. 1.11.3 being what I just explained requires an offense be stated in the charging instrument. That is not accurate in this case. In this case, there were many motions attacking the information. There was a demand for a bill of particulars. That's not common in a lot of criminal cases that I've dealt with, mostly because it's pretty clear what's going on. Here, we still don't know what's going on. The DNR has taken a position that the respondents, who are the judges in this case, haven't taken. The judges are taking a position the state didn't take. The state went to trial on Section 10, so we've got a late-hour switch. So here, we really are at a loss in terms of the confusion. So the standard is different, though. Here I am. You got me back. The standard is different. So that's the standard, the sufficient notice standard, if there are no pretrial filings. But when you have multiple motions and a demand for a bill of particulars filed pretrial and posttrial, then a different standard applies. That would be the standard in Thingvold and Strait. It's even alluded to in Gilmore, which the Attorney General's Office does cite in their brief. The standard then is strict compliance. So it is not enough for them to say at this 11th hour that 11A applies when 11A we've already explained. Even if 11A was allowed, it doesn't apply. But they needed to set forth the offense in their charging instrument. They did not. We have Section 10, a rules-enabling statute, Section 1535.1B, an explanation of the application process which governs licensees and licensure applicants, and Section 1535.60, which is a penalty provision that attempts to bestow jurisdiction on a circuit court to adjudicate findings of guilt, which you can't have because an administrative regulation absent an offense, a statutory penal statute, doesn't exist. For these reasons, we would ask that an order for prohibition be entered directing the court in Schuyler County to enter a dismissal order and stop doing anything further because it is beyond the scope of their jurisdiction. The circuit court in Schuyler County lacks jurisdiction. They did then. They do now. Thank you very much, and have a good day. Thank you. Good morning. May it please the Court, Counsel. Good morning. I'm Assistant Attorney General Josh Schneider on behalf of the respondents. The Court should deny the petition for an order of prohibition because not only does the circuit court have The normal appellate process is perfectly capable of providing any relief to which a petitioner might be entitled on his claim that the charging instrument was fatally defective or that the offense is unconstitutional because it violates the separation of powers, and because a lack of jurisdiction Those two propositions are related, right, Counsel, because you cite Hughes v. Kiley, and Hughes said that defendants' remedies, if any, from this ruling do not rest in writs of prohibition since no question of jurisdiction is at this point involved. That's exactly right. So there is a contention, obviously, between you and opposing counsel as to whether or not points of jurisdiction or questions of jurisdiction are involved. That's exactly right, and I'm prepared to explain why we disagree. Petitioner argues that the circuit court lacks subject matter jurisdiction because the charging instrument alleged that he committed two Class A misdemeanors for violating administrative rule, but not cite the statute, Section 11A, that provides that it is a Class A misdemeanor to violate administrative rule. In other words, What import is it that you didn't charge 11A? That's true. They didn't charge 11A. But as Petitioner or Counsel has argued here just now, and as he argues in the reply brief at page 7 and 8, their position is that any failure to strictly comply with the pleading requirements deprives the circuit court of subject matter jurisdiction. So in other words, a failure to cite the applicable statute, a failure to completely lay out the elements of offense, a failure to provide the date and county of the offense, any of these would deprive the circuit court of subject matter jurisdiction. But as this Court has made clear in Belleville-Toyota and in Ray-Louise R. and in Gilmore, the legal sufficiency of the charging instrument is just irrelevant to the question of subject matter jurisdiction. Even a fatal defect, as this Court noted in Louise R., has no bearing on whether the circuit court has subject matter jurisdiction. The only question that is relevant with respect to the subject matter jurisdiction in the connection with the charging instrument is did the charging instrument allege a justiciable matter? So Counsel, I believe, stated no offense, no jurisdiction. That's not quite right. It's no justiciable matter, no jurisdiction. And our Constitution provides that the circuit court has subject matter jurisdiction over all justiciable matters. And a justiciable matter is merely a matter, a controversy that's sufficiently definite and sufficiently concrete. It's not hypothetical. It has a bearing on the legal rights of the defendant. And it's not within the exclusive jurisdiction of this Court or a review of an administrative body's decision. Or as Louise R. put it, it was the only question is whether the asserted claim, legally sufficient or not, was filed in the proper tribunal. If it was, then subject matter jurisdiction is present. That's at page 303 of Louise R. And here, there's no question that the information alleged a justiciable matter. It alleged that Petitioner committed a Class A misdemeanor by violating an administrative rule. That's not hypothetical. It says he actually committed this conduct, and because of that conduct, he is subject to criminal sanction as a Class A misdemeanant. There's also no question that trying Class A misdemeanors is within the general class of cases that the circuit court has inherent authority to adjudicate. Trying Class A misdemeanors is not the review of an administrative body's decision. It's not within this Court's exclusive original jurisdiction. And so because the information alleged a justiciable matter, whether that justiciable matter was legally sufficient to support conviction or not, subject matter jurisdiction covered it. It's for exactly that same reason that the separation of powers argument is irrelevant to subject matter jurisdiction. Again, the legal sufficiency just doesn't have any bearing on jurisdiction. Whether the offense that's charged is in violation of the separation of powers or the single subject rule or the First Amendment substantive due process, whether the statute was repealed, just doesn't matter. Now, it may be that if you charge someone with an offense that had been repealed, it will be a very short motion to dismiss and a very short hearing on that motion. But the circuit court has subject matter jurisdiction to hear the case. Turning to the question of the adequacy of the remedy in the normal appellate process, even if a petitioner could establish a lack of subject matter jurisdiction, his petition would still fail because the normal appellate process can provide full relief. It can vacate his conviction. His argument that it's not adequate, that pressing his claim that the indictment was, or the information, rather, was fatally defective and the offense was unconstitutional, that pressing those through the normal appellate process can't provide him full relief because in the interim, during the pendency of that appeal, he'll have to endure the direct and collateral consequences of conviction. He may have his license revoked. It may affect his results. He may be placed on probation. Those consequences don't render the normal appellate process inadequate. If that were the case, every criminal defendant would, with a challenge to the sufficiency of the charging instrument in his or her case, would end up on this court's prohibition docket because every criminal defendant, during the pendency of his or her appeal, endures the consequences, direct and collateral, of conviction. There's, setting aside actual imprisonment for people who are committed of felonies, they may lose their driver's license, a business license. They may be subject to the registration obligations of the Sex Offender Registration Act. And none of those consequences have ever been recognized as rendering the appellate process inadequate to provide relief. If the appellate court finds that the indictment or the charging instrument was fatally defective, it can vacate the conviction, providing full relief. Petitioners' contrary position would effectively eliminate appellate review for any claim involving the charging instrument. And I understand that everything we've been talking about is whether this writ should be denied rather than allowed, right? Both the jurisdiction and the adequacy of the appellate review. But do you disagree with counsel that a criminal charge can't be based solely on a violation of an administrative regulation? I, you know, I haven't given it much thought because this case just doesn't present that question. One of the arguments that came up in the briefing was, well, even if there's an adequate remedy, the administrative, the administration of justice requires that the court address this because we need to know whether a purely regulatory violation that doesn't have a criminalizing statute attached to it can support a criminal conviction. But that's just not the case here. Section 11A plainly states that, quote, any person in violation of any provision of this Act or administrative rules thereunder shall be guilty of a Class A misdemeanor. It could not be plainer that a violation of administrative rule is a Class A misdemeanor under Section 11A. Counsel has argued that, well, that's a penalties provision, it's not a penal statute. And the distinction, I'm not sure what the distinction is between a penalty statute and a penal statute. But it says that a violation of a rule is a crime. This is typically how the General Assembly criminalizes regulatory violations, is by enacting a statute saying that a regulatory violation is a crime. And certainly there was no confusion below as to whether there was a criminal statute that applied in Exhibit K to petitioner's motion for leave to file a petition for an order of prohibition. That's the order that the Circuit Court entered denying petitioner's motion to dismiss the amended information. In paragraph D, the Court specifically found that the applicable statutes provide that a violation of administrative rules and regulations are crimes. That's paragraph D3. And then later down in D10, the Court found that, quote, the statute provides that a violation of the administrative rules is a Class A misdemeanor. So it doesn't appear that there's any confusion below as to what the offense was. It was a Class A misdemeanor based on a violation of the administrative rules. Counsel, but the State never did reference 11A at all. So without some valid reference to a statutory provision that criminalizes the regulatory violations, how could the Circuit Court have jurisdiction if 11A has never been charged? Because jurisdiction has nothing to do with whether an offense is adequately pled is the short answer. An offense adequately pled? Yes. If the State came in and alleged that the offense that was pled was a violation of administrative rule 1535.1b, the State alleged that petitioner committed a Class A misdemeanor. That is a justiciable matter, whether he violated the rule and that actually, first of all the question is, did he violate the administrative rule? That's one justiciable question. The second one is, did that violation subject him to criminal sanctions as a Class A misdemeanor? Both of those are concrete, definite questions that are suitable for adjudication by a court. Whether they actually subject petitioner to criminal sanctions is a separate question, a non-jurisdictional question. That's the question I'm asking you. Right. So the answer is no. If the State had come in and said petitioner committed a Class A misdemeanor for doing, it didn't say anything, it just said he committed a Class A misdemeanor for acting as an authorized buyer of a knife. So the answer is no. The answer is no.  The answer is no. And we know that they're alleging that he did something with a knife, right, and we know that they're alleging that he's subject to criminal sanctions as a Class A misdemeanor based on that conduct. The motion to dismiss will be successful, but the motion to dismiss will be successful not because the circuit court lacked subject matter jurisdiction, but because the indictment was fatally defective. The question of whether an indictment is sufficient, whether it adequately pleads the offense, is just a separate inquiry from the question of whether there was a justiciable matter. Was there a concrete allegation that affected the legal, purported to affect the legal rights of the defendant? If you allege that the defendant committed a Class A misdemeanor or a Class 1 felony or a Class 2 felony, any sort of crime, you've alleged a justiciable matter. You may not have alleged a matter that is sufficient under due process, but you've alleged a matter sufficiently to invoke subject matter jurisdiction under the Illinois Constitution. So because there was subject matter jurisdiction, which is a very low bar, it's just have you alleged that something happened, and the court can determine whether or not that thing happened and whether there are legal consequences that flow from it. And because even if there wasn't, the mere fact of the criminal conviction is not an irremediable harm that renders the normal appellate process inadequate. This court should deny the petition. Petitioners contrary. And I think that's right, counsel. And I think what you're getting to is mistaken statutory citations in a charging instrument don't require one raised for the first time on appeal, a reversal one raised for the first time on appeal, unless the defendant can show prejudice, right? That's certainly true. But here, does it make it any different that the petitioner raised the problem here before trial? No, it doesn't. And why does it? Because the question of the standard by which the sufficiency of the indictment is reviewed for sufficiency just has no bearing on the question of subject matter jurisdiction. The cases that Petitioner cites, talking about the standard of review of a charging instrument, were not cases involving questions of jurisdiction. They're questions about the sufficiency of the indictment. And Petitioner's position that any error in the charging instrument, if raised in the trial court and the motion is not granted there, is a jurisdictional defect. If that's the case, and further, the mere fact of conviction and the direct and collateral consequences of that fact renders the normal appellate process inadequate, then every criminal defendant who has a complaint about his charging instrument is going to end up in this court filing an action seeking prohibition. The normal process for a criminal case will no longer be trial, direct appeal, PLA. It will be trial, verdict, original prohibition action in this court, sentence, direct appeal, PLA. And we would submit that that is neither a practical nor a necessary approach towards the remedying of allegations of error in the trial court. We've got a large and capable appellate court system that is ready and raring to go to address claims that the charging instrument was in some way defective and that the conviction needs to be overturned because of that. And there's no reason for this court to involve itself in every case post-verdict, pre-sentencing, where a defendant believes that his charging instrument was defective. So if there are no further questions, for those reasons, we ask that the court deny the petition for an order of prohibition. Thank you. Thank you. Reply. Please, the court, counsel. A few points. I would state that the In Re Lewis case says that generally the circuit courts can have jurisdiction over the general class of cases that they bestow jurisdiction with. The general class of cases would be cited in Article VI, Section 9 of the Constitution, and with respect to administrative proceedings, it's as a court of review, not as a court of adjudication. So even In Re Lewis, which is just cited, cuts against the state, does not favor the respondent's position. With respect to the sufficiency of the indictment, the cases that we did cite, the Thingvold case and the Strait case, those were attacks on the sufficiency of the indictment because an attack on the sufficiency of the indictment is a jurisdictional issue. If 111-3 is not complied with, the court lacks jurisdiction. A question was just asked. What offense was pled? I think I've explained what an offense is several times, but the answer that the Attorney General's office gave was 1535.1b. That's not an offense. It's not an offense in the criminal code. It's not an offense under the Code of Criminal Procedure. It's not an offense. This is not a case where if you rule in favor of the petitioner, you're going to open up the floodgates for orders of prohibition or orders seeking prohibition. Because by and large, most charging instruments get it right. As a defense attorney, I hate it, but it's true. They get it right. It's not your position that every time information is fatally defective or defective because it improperly charges an offense, that that affects the court's jurisdiction? No. With respect to the offense, if it doesn't state an offense in the charging instrument, yes, I believe that is jurisdictional. Here, most of the time, the state does get it right. They cite an offense, a statutory provision before trial, or if they have to clean it up, still before trial. Here, we are changing it in the Respondent's Brief before the Illinois Supreme Court. Section 11A is not anything that the petitioner, the defendant of the trial court level, was ever arraigned on, ever asked to plead guilty to, ever been able to see the jury instructions, which there are no pattern instructions for this.  Correct. The jury instructions for 11A were never given to, this is something that came up after the fact, jury instructions for 11A. This is kind of a, I think to quote Dan O'Day, a switcheroo on the petitioner here because this is something that's coming up after trial. Again, I don't want to belabor the point. This is a very, very different situation than an ordinary defendant in the ordinary appellate process. Now, the court actually can, and we cited a few cases. We cited the Zabel case that this is important to the administration of justice because this court can set forth the rule that, yes, for an offense, you need to have a statute cited in the charging instrument. That is in lockstep with all the case law that there is out there. And if you have a pretrial attack on the sufficiency of the indictment, and indeed the court's jurisdiction, strict compliance with 111.3 is necessary. We also cited the Moore case in our brief for the proposition that even in, even if the ordinary appellate process is adequate, the court can still, in its discretion, enter such an order. This is an extraordinary case. I mean, the record shows it's an extraordinary case. You're not going to see a bunch of cases coming up here saying no statute was pled in the information or indictment. This is really anomalous. I mean, I'm happy because it got me before all of you, but I wish that it hadn't happened for my client's sake. For those reasons, I would ask that the request of relief be granted. Thank you very much. Thank you. Case number 123370, Edwards v. Atterbury, will be taken under advisement as agenda number three. Mr. Hanauer, Mr. Schneider, we thank you for your arguments, and you are excused.